UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:                                                         **CASE NO. 06-10814**

**RONNIE R. RUSHING**
**LORI L. RUSHING**

DEBTORS                                                        CHAPTER 7

### MEMORANDUM OPINION

Trustee Dwayne Murray objected to the claims of Darrylinn Babin, Thomas E. Garrett and Sara Scott against the estate of chapter 7 debtors Ronnie and Lori Rushing. Babin and Scott filed claims for $120,000 and Garrett filed a claim for $100,000. The court sustains the trustee's objections in part.

### Facts

The debtors were members of Louisiana's Finest Antiques, L.L.C. ("Louisiana's Finest"). Through the limited liability company they ran a flea market in a building leased from Spring Park Plaza Associates, L.P. ("Spring Park").[1] Babin, Garrett and Scott subleased space from Louisiana's Finest; they had no contractual relationship with the debtors. The flea market closed in March 2006 after Spring Park terminated Louisiana's Finest's lease.

The three creditors joined others to sue the Rushings, Louisiana's Finest and Grand Gallery Auction, L.L.C. (another company Ronnie Rushing operated) for damages stemming from the termination of their businesses.[2]

---

[1] The debtors' original schedules (P-2) did not disclose this asset. It was added by amended schedules filed November 13, 2006 (P-13).

[2] A copy of the petition in "Lynn Dale Stearns, et al v. Ronnie Rushing et al.," Suit No. 113472 filed September 29, 2006 in the Twenty-first Judicial District Court for Livingston Parish, is attached to Garrett's

The evidence included the testimony of the claimants and their witnesses.  Neither debtor testified.

### A.  Darrylinn Babin's Claim

Darrylinn Babin was one of the flea market's first tenants.  Mrs. Babin's store, a sole proprietorship doing business under the name Southern Charm, offered merchandise including fragrances, novelty items, jewelry, hair pieces and occasionally antiques. Babin's original lease was for a term of six months[3] but she never renewed it, instead allowing the lease to be reconducted repeatedly on a month-to-month basis.  *See* Louisiana Civil Code articles 2721 and 2723(1).  Despite this, Mrs. Babin considered her business a long term endeavor; she operated it for three years after the original lease term before Louisiana's Finest's loss of possession forced her to leave the flea market.

Mrs. Babin bases her claim on Ronnie Rushing's misrepresentations to her in late 2005.  Specifically, in November 2005 Mrs. Babin asked Rushing for more space at the flea market to expand her business.[4]  Rushing encouraged her to expand the business, telling her that Louisiana's Finest had leased the building through 2012.  Relying on Rushing's assurances, Mrs. Babin bought inventory and other materials in preparation for the Christmas shopping season.[5]

---

proof of claim for claim number 15-2.  The debtors' chapter 7 bankruptcy filing in September 2006 automatically stayed the lawsuit against them.

[3]  Mrs. Babin testified that no copy of the original lease survives.

[4]  Babin's business over time grew to occupy thirteen booths; her monthly rent was about $3000.

[5]  Mrs. Babin traveled to wholesale markets in Houston, Texas to make the purchases.  She testified that December was her shop's best month.

### B.  Thomas Garrett's Claim

Mr. Garrett's claim for $100,000 is based on his being forced out of the flea market at the end of March 2006.

Garrett opened his digital photography business in October 2005 after Hurricane Katrina forced him to leave New Orleans.  Garrett's six-month lease with Louisiana's Finest began in October 2005 and so would have expired in March 2006.  No evidence established Garrett's contractual right to remain on the premises after March 31, 2006.

Rushing gave Mr. Garrett the same assurances he had given Mrs. Babin. Specifically, when Garrett was planning his business venture at the flea market in October 2005, Rushing told him that the flea market was a stable business that had a lease to operate in its current location until 2012.  In January 2006, Rushing agreed to Garrett's request to expand his business into a vacant adjoining booth, telling Garrett that he was glad Garrett was expanding the business.

### C.  Sara Scott's Claim

Sarah Scott claimed that the debtors owe her $120,000 comprising lost income, business losses, moving costs, costs to re-establish her business, and mental anguish and humiliation.

Ms. Scott sold sterling silver jewelry from a booth she rented at the flea market beginning in January 2006.  Scott soon became interested in moving to a more desirable location in the market but worried about paying the higher monthly rent.  Ronnie Rushing's assurances that things were fine at the flea market, like his assurances to Babin

and Garrett, persuaded her to rent the new space and order more inventory in anticipation of greater sales.  She also enhanced the new space's appearance by installing new carpet.[6]

*Termination of Leases*

The evidence established that Louisiana's Finest was facing eviction at the very time Rushing was reassuring Babin, Garrett and Scott of the flea market's vitality.  Louisiana's Finest stopped paying rent by September 2005.  It also had not paid 2004 real estate taxes which were due December 31, 2004.[7]  In fact in November 2005 its landlord, Spring Park, had sued to recover possession of the premises.[8]  Although Spring Park and Louisiana's Finest entered into a consent judgment,[9] Louisiana's Finest filed chapter 7 on January 31, 2006 after it failed to make the payments the agreement required.  Spring Park eventually obtained relief from the automatic stay to conclude the state court eviction.[10]

Rushing met with the flea market tenants in late March 2006 to tell them that Louisiana's Finest had lost its lease and that they had to vacate the property in three days.  All three claimants left the flea market by the end of March 2006.

---

[6]  Scott also bought a new automobile for the business.  It was totaled in November 2009 but she received the insurance proceeds.

[7]  See Motion of Spring Park Plaza Associates, LP to Determine Inapplicability of Automatic Stay or Alternatively for Relief from Stay (P-20) ("Stay Relief Motion") and attached exhibits filed February 13, 2006 in *Matter of Louisiana's Finest, LLC*, Case No. 06-10029 in the United States Bankruptcy Court, Middle District of Louisiana.

[8]  Rule to Show Cause for Possession in *Spring Plaza Assoc. v. Louisiana's Finest*, Suit No. 109911, 21st Judicial District Court, Parish of Livingston (Exhibit B to Stay Relief Motion).

[9]  February 2, 2006 Consent Judgment in *Spring Park Plaza v. Louisiana's Finest* (Exhibit C to Stay Relief Motion).  Although it seems inconsistent with the judgment's signing date, the consent judgment bound Louisiana's Finest to pay Spring Park $180,000 by January 30, 2006 in order to avoid eviction.

[10]  See Stay Relief Motion, ¶33.  The court granted the Stay Relief Motion on March 23, 2006.

Mrs. Babin tried to continue her business at a new location.  Ms. Scott also moved to new quarters and even tried to sell her merchandise at weekend flea markets.  Both businesses eventually failed.  The record did not establish the disposition of Mr. Garrett's business after the flea market closed, though by the hearing date he was living in Florida.

**Analysis**

Through the fall of 2005 and early winter of 2006, when Ronnie Rushing was reassuring Babin, Garrett and Scott about Louisiana's Finest's right to occupy the flea market and their own right to stay in the space, Rushing knew that Louisiana's Finest had defaulted on its lease with Spring Park and was facing eviction.  The evidence therefore supports a finding and conclusion that in late 2005, Rushing intentionally misled the claimants about their ability to stay in business at the flea market.

*A.  Ronnie Rushing is Liable for his Intentional Misrepresentations*

Babin, Garrett and Scott had no direct contractual relationship with the Rushings because their leases were with Louisiana's Finest, LLC.  However, Louisiana Civil Code 2315 does not require a contractual relationship between parties in order impose liability for fraud or intentional misrepresentation.  *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1068 (5th Cir. 1993).  Tort liability merely requires: "(a) a misrepresentation of a material fact, (b) made with the intent to deceive, and (c) causing justifiable reliance with resultant injury." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999). Ronnie Rushing's misrepresentations to the three creditors about the status of Louisiana's Finest's lease neatly fit this definition and render him liable to the creditors.

First, Rushing misrepresented the status of Louisiana's Finest's lease to Babin and Garrett when he told them that Louisiana's Finest had the right to occupy the premises

through 2012.  His assurances to them were material.  Although Sara Scott did not claim that Ronnie Rushing specifically told her the flea market lease extended through 2012, she did testify that before March 2006 he never told her that Louisiana's Finest was having any problems with its lease.

Ronnie Rushing was Louisiana's Finest's managing member and signed the statement of financial affairs filed in its bankruptcy,[11] which identifies the Spring Park eviction lawsuit in its response to question four.  Specifically, Louisiana's Finest's response to Spring Park's Motion to Dismiss or Convert its bankruptcy acknowledges that the flea market defaulted on the Spring Park lease in September 2005 and that Spring Park refused to accept its later rent payments.[12]  Therefore, the evidence supports an inference that Rushing knew Louisiana's Finest had defaulted on its lease before November 2005.

Second, the evidence supports an inference that Rushing intended to deceive Babin, Garrett and Scott.  Despite his knowledge of Louisiana's Finest's default, Rushing misled Babin, Garrett and Scott into believing that nothing prevented the flea market from staying in business at its location.  Rushing continued to collect rent from Babin, Garrett and Scott through March 2006 although he had stopped paying rent to the prime lessor in August 2005.  Rushing's assurances were intended to lull all three claimants into acting to their detriment and to the advantage of Louisiana's Finest.

Finally, Babin, Garrett and Scott justifiably relied on Rushing's misrepresentations and were injured as a result.  Louisiana's Finest had operated the flea

---

[11]   Statement of Financial Affairs for Louisiana's Finest, LLC in Case No. 06-10029 (P-38).

[12]   Objection of Louisiana's Finest, LLC to Motion to Dismiss Debtor's Bankruptcy Case Pursuant to 11 U.S.C. §1112, or Alternatively, to Convert the Debtor's Case to a Case under Chapter 7 of the Bankruptcy Code in Case No. 06-10029 (P-23), pp. 2-3.

market since 2002 so it was not unreasonable for the three claimants to rely on Mr. Rushing's statements that the leases would be secure for some time.  All three testified that had Ronnie Rushing not lied to them about the flea market's ability to stay in the premises, they would not have taken the steps they did to start (in Garrett's case) or expand (in the case of Babin and Scott) their businesses.  The misrepresentations led long-time tenant Darrylinn Babin to incur expenses to expand her business, Sara Scott incur costs to relocate in the flea market, and Thomas Garrett to spend a substantial sum establishing a completely new business at the flea market.

### B.  Liquidating the Damage Claims

Louisiana Civil Code article 2315 contemplates a damages award for economic injuries resulting from fraud or intentional misrepresentation.  *See Guidry,* 188 F.3d at 627.  The issue is whether Babin, Garrett and Scott have proven the damages they allegedly suffered.[13]

### 1.  The Claimants Failed to Prove their Lost Profits

Though Babin, Garrett and Scott each claim damages for loss of income and loss of business,[14] they actually contend that Rushing kept them from making future profits. Louisiana law allows recovery of lost profits as an element of damages for the intentional tort of fraud.  *Water Craft Management, L.L.C. v. Mercury Marine*, 638 F.Supp.2d 619,

---

[13]   Fed. R. Bankr. P. 3001(f) provides that a properly executed proof of claim is entitled to *prima facie* validity.  Once a valid objection is made to the claim, the burden of proof shifts back to the claimant.  *See In re Allegheny International, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992).  The same burden of proof applies to lay persons representing themselves.  *See In re Wright*, 223 B.R. 886, 893 (Bankr. E.D. Pa. 1998) (no lower standard of rules or procedure once *pro se* litigant moves from the liberal pleading stage of litigation to the point of proving his claim).

[14]   See ¶11, Petition for Damages in "Lynn Dale Stearns, et al v. Ronnie Rushing et al.," Suit No. 113472 filed September 29, 2006 in the Twenty-first Judicial District Court for Livingston Parish.  The petition was attached to Garrett's Proof of Claim for claim number 15-2.

623 (M.D. La. 2009), citing *Haggerty v. March*, 480 So.2d 1064, 1068 (La. App. 5th Cir. 1985).  Babin, Garrett and Scott bear the burden of proving their lost profits by a preponderance of the evidence.  *Id*.  Moreover, "to recover for his lost profits and earnings…. [a] plaintiff must prove the loss with reasonable certainty….  [m]ere estimates of loss will not support a claim for lost profits."  *Haggerty*, 480 So.2d at 1068.[15]

Babin, Garrett and Scott failed to prove their claims for lost profits.

Mrs. Babin submitted in support of her claim a binder holding bank statements, receipts, check stubs, photographs of merchandise and a recapitulation of previous years' sales.[16]  However, the data in the binder portrayed her business's gross sales rather than its net profits.  Babin also admitted at trial that for two years the business did not make money and volunteered that she was lucky to make enough to pay her rent and replace inventory that had sold.

Mr. Garrett offered no evidence to support a finding that he lost any profits, and did not even introduce documents establishing sales for the time he was in business at the flea market.

Finally, Ms. Scott's evidence also lacked any information on which the court could base a finding that she lost any profits.

In summary, Babin, Garrett and Scott are not entitled to a claim for lost profits.

---

[15]   Proof of future lost profits can be difficult "without expert testimony establishing [the] lost future profits, and without proof of net profits."  *Water Draft*, 638 F. Supp. 2d at 623.

[16]   Exhibit Babin 1 *in globo*, tab marked "Sales".

2. The Claimants Did Not Prove Their Moving Expenses and
Other Costs of Relocating the Businesses

Babin, Garrett and Scott also include in their claims the costs of moving their

businesses from the flea market, storing their inventory and setting up business in another

location.[17]  However, injured parties have a duty to mitigate damages caused by the

wrongful action of another.  *Dupre v. Tri-Parish Service, Inc.*, 355 So.2d 554, 556 (La.

App. 3d Cir. 1978).

The evidence showed that Babin and Scott tried to mitigate the effect of being

forced out of the flea market.  Both found new premises and for some time tried to

continue in business.  In contrast, Garrett offered no evidence of his steps to relocate and

continue his business.  More importantly, none of the claimants offered any evidence of

their efforts to sell their inventory or equipment to recover some of the losses they

sustained due to Rushing's misrepresentations.[18]

Babin, Garrett and Scott are not entitled to a claim for the expense of moving or

relocating their businesses.

3. The Claimants Are Entitled to Damages for Non-Pecuniary
Losses

Louisiana law requires courts to award some damages "where damage (including

loss of profits) and liability are certain and quantum is uncertain…."  *Folds v. Red Arrow

Towbar Sales Co.*, 378 So.2d 1054, 1059 (La. App. 2d Cir. 1979).  This is especially true

where the damages were the result of an offense or quasi-offense by a tortfeasor.

*Koncinsky v. Smith*, 390 So.2d 1377, 1382-83 (La. App. 3rd Cir. 1980); *New Orleans*

---

[17]   See footnote 14.

[18]   Ms. Scott in fact testified that she still has some of her inventory, which is in storage.

*Shrimp Co., Inc. v. Duplantis Truck Lines, Inc.*, 283 So.2d 521, 525 (La. App. 1st Cir. 1973).

An injured party may recover non-pecuniary losses in an action for fraud under Louisiana Civil Code article 2315. *Haggerty*, 480 So.2d at 1068. Non-pecuniary damages can include recovery for mental anguish, aggravation and inconvenience the alleged wrongful actions caused. *Meador v. Toyota of Jefferson. Inc.*, 332 So.2d 433, 438 (La. 1976). A trier of fact has considerable discretion in assessing damages for offenses, quasi offenses and quasi contracts. *See Smith v. Roussel*, 809 So.2d 159, 167 (La. App. 1st Cir. 2001), citing Louisiana Civil Code art. 2324.1.[19]

Ronnie Rushing's intentional misrepresentations damaged Babin, Garrett and Scott, even though the claimants did not prove the quantum of those damages. The evidence established beyond any doubt that Rushing's actions caused Babin, Garrett and Scott mental anguish, aggravation and inconvenience. The court allows each a $5,000 non-priority unsecured claim.

> ### 4.   Thomas Garrett's is Not Entitled to a Claim for Attorney's Fees and Litigation Costs

Mr. Garrett also claims $12,350, calculated at the rate of $100 an hour, for his time prosecuting his claim. On these facts no law supports the ability of a lay *pro se* litigant holding an unliquidated unsecured claim to recover the value of the time he spent participating in the bankruptcy. *Compare Kay v. Erhler*, 499 U.S. 432, 435, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991) ("The Circuits are in agreement … on the proposition that a *pro se* litigant who is *not* a lawyer is *not* entitled to attorney's fees" (emphasis in original)).

---

[19]   Article 2324.1 states that "[i]n the assessment of damages in cases of offenses, quasi offenses and quasi contracts, much discretion must be left to the judge or jury."

Mr. Garrett also claims $4100.75 for mailing and express service for filings, PACER charges, mileage and lodging while traveling to court in Baton Rouge from his Florida home, and expenses he incurred traveling to New Orleans to meet with the United States Trustee about the Rushings' cases. No law supports an award of litigation costs to a *pro se* non-attorney litigant on these facts.

### C. Babin's and Scott's Tardily Filed Claims

The analysis of Mrs. Babin's and Ms. Scott's claims does not end at their allowance since both filed their claims after the deadline for filing. The trustee's objection to the claims rests in part on their tardiness. Their delay in filing affects the treatment of the claims in the chapter 7 liquidation.

The trustee gave notice of the February 5, 2007 deadline for filing claims on November 7, 2006.[20] Mrs. Babin did not file her proof of claim until July 27, 2009. Ms. Scott originally filed a proof of claim on July 27, 2009 but later withdrew that claim and subsequently filed another proof of claim on October 9, 2009.

The debtors did not list Darrylinn Babin and Sara Scott as creditors on the original schedules, but they were included as unsecured creditors on the debtors' amended schedules filed November 14, 2006, and were added to the clerk's official mailing list for the case at the same time.[21] The certificate of service for the amended schedules recites that debtors' counsel served the notice of the amendment and the amended schedules on both Babin and Scott by mail on November 9, 2006.

---

[20] Notice of Assets and Deadline to File Proof of Claim (P-11).

[21] Amended Schedules (P-14).

Bankruptcy Code section 502(b)(9) requires the court to disallow untimely claims unless 11 U.S.C. §726(a)(1), (2) or (3) permits their tardy filing. Section 726(a) establishes the order for payment of allowed claims. Section 726(a)(1) provides for payment to holders of priority claims and does not apply here.[22] Subsection (a)(2)(C) of 726 gives second priority for payment to allowed unsecured claims that are timely filed and to tardily filed claims, *if* the creditor that filed the tardy claim "did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim . . . ."

Knowledge of a pending bankruptcy case will bar a creditor's claim if that creditor took no action to protect the claim, whether or not the creditor received official notice of the pertinent date from the court. *Neeley v.* Murchison, 815 F.2d 345, 347 (5th Cir. 1987); *In re* Alton, 837 F.2d 457, 460 (11th Cir. 1988).

The evidence supports an inference and finding that both Darrylinn Babin and Sara Scott had notice and knowledge of the Rushings' bankruptcy case in sufficient time to file timely proofs of claim.[23] Neither Mrs. Babin nor Ms. Scott offered any credible evidence that they lacked notice or actual knowledge of the Rushings' bankruptcy in time to file proofs of claim by the bar date.

Accordingly, Babin's and Scott's claims do not fall within the meaning of section 726(a)(2)(C) and will not be treated as timely—though that does not mandate disallowance of the claims.

---

[22]  Section 726(a)(1) provides for first priority payment to timely priority claims (in the order prescribed by 11 U.S.C. §507) and to tardy priority claims filed on or before the date the trustee begins final distribution or within 10 days after the mailing of the trustee's final report. The trustee has not yet filed a final report or started final distribution.

[23]  The amended schedules identifying Babin and Scott as creditors were mailed to both creditors. Mail that is properly placed into the mail system creates a rebuttable presumption that the party to whom it was addressed received it. *Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932). That presumption applies in bankruptcy cases. *In re Heyward*, 15 B.R. 629, 632 (Bankr. E.D.N.Y. 1981).

Section 726(a)(3) applies to tardily filed allowed unsecured claims not within the scope of §726(a)(2)(C) and governs treatment of Babin's and Scott's claims. Even though they filed the claims after the bar date, the trustee can pay them as allowed unsecured claims albeit with third priority distribution provided the estate has sufficient funds to pay them.

### Conclusion

Darrylinn Babin, Thomas Garrett and Sara Scott have established their claims resulting from Ronnie Rushing's pre-petition fraudulent misrepresentations. Darrylinn Babin, Thomas Garrett and Sara Scott are each allowed a nonpriority unsecured claim in for $5,000.

Because Babin's and Scott's claims were filed after the bar date, they are subject to payment only when and as 11 U.S.C. §726(a)(3) provides.[24]

Baton Rouge, Louisiana, March 3, 2010.

<u>**s/Douglas D. Dodd**</u>
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

---

[24]   This ruling does not establish or limit Babin, Garrett and Scott's claims against the Rushings individually; it only fixes them against the bankruptcy estate. The claimants retain their remedies under applicable non-bankruptcy law because the court revoked the Rushings' discharge. Agreed Judgment Revoking Discharge in "Dwayne M. Murray v. Ronnie and Lori Rushing," Adv. No. 07-1145 in the United States Bankruptcy Court for the Middle District of Louisiana (P-42).